1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  UNITED STATES OF AMERICA, | No.  1:13-cr-00194-DAD-BAM-1 |
| 12                Plaintiff-respondent, | |
| 13  v. | ORDER DENYING DEFENDANT'S |
| 14  ROBERT WALLACE SMITH, | MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 |
| 15                Defendant-movant. | (Doc. No. 162) |
| 16 | |

17          Defendant-movant Robert Wallace Smith ("movant") is a federal prisoner proceeding *pro*

18  *se* with a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  (Doc.

19  No. 161.)  On May 27, 2016, a jury returned a verdict finding movant guilty for receiving or

20  distributing child pornography in violation of 18 U.S.C. § 2252(a)(2), as charged in the

21  indictment.  (Doc. Nos. 1, 105.)  On September 12, 2016, movant was sentenced to the custody of

22  the U.S. Bureau of Prisons for a 240-month term of imprisonment.  (Doc. Nos. 122, 126.)

23          Movant now seeks post-conviction relief pursuant to 28 U.S.C. § 2255 on two grounds:

24  (1) that there was a broken chain of custody of certain evidence collected during execution of a

25  search warrant, specifically his laptop computer on which pornography files were found; and (2)

26  that the district court erred in allowing the prejudicial and biased testimony of his former

27  girlfriend to be admitted at his trial, in violation of Federal Rules of Evidence 404(b) and 403.

28  (Doc. Nos. 162 at 5; 173 at 1.)  The government contends that the pending motion should be

denied because movant's chain of custody claim was not raised on direct appeal and is thus procedurally defaulted, and movant's challenge to the admission of testimony from his former girlfriend was rejected on the merits by the Ninth Circuit on direct appeal and thus cannot be relitigated in this § 2255 proceeding.  (Doc. No. 168 at 4–6.)

For the reasons discussed below, the court will deny movant's § 2255 motion.

**PROCEDURAL BACKGROUND**

On May 9, 2013, the government filed an indictment charging movant with one count of receipt or distribution of a visual depiction of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2).  The jury trial in this action commenced on May 24, 2016, and the jury returned a guilty verdict on May 27, 2016.  (Doc. No. 105.)  Movant was later sentenced to 240 months imprisonment with a 240-month term of supervised release to follow, as well as to pay $5,000 in restitution to a victim of his offense and the mandatory $100 special assessment.  (Doc. Nos. 122, 126.)  Movant appealed his judgment of conviction to the Ninth Circuit, which affirmed his conviction and sentence on May 3, 2018.  (Doc. No. 158.)  On June 25, 2018, the Ninth Circuit denied movant's petition for rehearing and rehearing *en banc*.  (Doc. No. 160.)  On October 15, 2018, the Supreme Court denied movant's petition for certiorari.  *Smith v. United States*, ___U.S.___, ___, 139 S. Ct. 394, 395 (2018).

Proceeding *pro se*,[1] movant timely filed the pending § 2255 motion on October 10, 2019.[2]  (*Id.*)  On November 1, 2019, the court requested a response from the government (Doc. No. 163), which the government filed on January 8, 2020 (Doc. No. 168).  On March 4, 2020, movant filed his reply to the government's opposition.  (Doc. No. 173.)

---

[1]  Although initially represented by the Federal Defender's Office (Doc. No. 7), attorney Eric K. Fogderude was later appointed to represent movant through pretrial proceedings, trial, and sentencing.  (Doc. Nos. 35, 36.)  On September 14, 2016, the court appointed attorney John Balazs to represent movant on appeal.  (Doc. No. 125.)

[2]  Movant filed his motion within one year of his conviction becoming final, as required by 28 U.S.C. § 2255(f).  *See Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.").  The government does not dispute that the pending motion was timely filed.  (Doc. No. 168 at 3.)

# FACTUAL BACKGROUND

The following factual background consists of excerpts from the statement of facts in the opening appellate brief filed by movant's appellate counsel.  (Doc. No. 168-1.)

On December 20, 2011, Department of Homeland Security (DHS) agent Tim Kotman used a web application called CPS to search the internet for people using peer-to-peer software who are making known files of child pornography available for the public to download.  Reporter's Transcript (RT) 190-92.  Using the CPS application, he identified an IP address that had files of child pornography available to download beginning in mid-November 2011.  RT 192, 256.

After obtaining the physical address and subscriber name for the IP address from the internet provider, he obtained a warrant to search the address of the subscriber, Mary Loyche, in Lemoore, California.  RT 194, 201, 203, 256.  When the warrant was executed on December 23, 2011, Mary and Greg Loyche, defendant Robert Smith's mother and stepfather, were present in the house, while Smith was in a trailer on the property.  RT 204, 266.  Agents found a laptop in the living room of the house and an external hard drive in a case without a plug underneath the bed in the trailer.  RT 277, 281, 282, 297–92.

After Smith waived his *Miranda* rights, agent Kotman and another agent interviewed Smith.  RT 207, 260.  . . .  During his interview, Smith told the agents that he lived in the trailer on the property and his parents lived in the house.  RT 260.  Smith acknowledged that the laptop found in the living room of the house was his and he was the only one who knew the password.  RT 216–17, 260, 277.  He later explained that he kept the password similar to another password and had shared it with his ex-wife in case she wanted to access the computer.  RT 265, 267.  Smith also told the agents that his daughter, who lived a few houses away, sometimes used the computers in the house.  RT 263.

When asked if he used file-sharing software, like Limewire, Smith replied that the last time he had used such software was about five years ago and none would be on his computer.  RT 262, 267.  He acknowledged that he had used file-sharing programs in the past to search for or download movies.  RT 217, 265.  When asked specifically about the peer-to-peer software called Frostwire, Smith explained that he had tried to install it a few months ago, but it didn't work and he uninstalled it.  RT 267.  . . .

On the external hard drive in the trailer, agents found a folder labeled "Robert's Anime" with a subfolder "Animals" that contained another subfolder "MYOB" that held child pornography files.  When agents asked about the folders, Smith admitted that he created the "Robert's Anime" folder, but denied knowing about the "Animals" folder.  RT 269.  Smith knew that MYOB stood for "Mind Your Own Business."  RT 221, 269–77.

3

. . . .

DHS agent Ulises Solorio testified as a computer forensic expert. He used a PowerPoint presentation to explain to the jury how the internet and peer-to-peer software works. RT 313–31. Using forensic software, he conducted a forensic examination of the laptop and external hard drive. RT 311. The laptop had Frostwire installed on it and contained over 100 videos and 100 images of child pornography. RT 334, 353–63, 431. There was also evidence of deleted child pornography on the laptop, RT 698, and he was able to recover a small number of deleted files. RT 701. The laptop's operating system was set up and registered to Robert Smith on October 19, 2010. ER 62, 63, 65. Agent Solorio also discovered that the laptop's clock was off by an hour and ten minutes. RT 417–18, 488–91.

. . . .

On cross-examination, agent Solorio admitted that he discovered malware on the laptop, RT 399, but believed it was a false positive. RT 427. He described malware as a malicious program that may attempt, among other things, to change settings on the computer and redirect internet traffic. RT 398. He acknowledged that through malware, a hacker could potentially control someone else's computer and direct the computer to perform various tasks from a remote location. RT 400. Malware can be delivered via a website, sometimes when a person downloads seemingly innocuous files. RT 400. Besides malware, there are other computer programs available to access a computer remotely, such as PCAnywhere or VNC, and other programs for determining a person's computer password. RT 401–02.

Agent Solorio also testified that at one point in 2012, the mirror image he created of the laptop's hard drive failed re-verification when he was moving the mirror image from his desktop computer to the network's storage. RT 414–15. This meant that there had been a change in the mirror image, which may have been corrupted. RT 412. His reports did not show the exact date the mirror image failed reverification, RT 414–15, but he believed it was before November 21, 2012. RT 416. This was the first time while testifying as a forensic expert that he experienced a mirror hard drive failing re-verification. RT 500.

. . . .

Elizabeth Crow was Smith's former girlfriend. RT 293. They dated from 2002 to 2011. RT 294, 433. They lived in Lemoore until December 2003, when they moved to Salinas, California. [Excerpts of Record ("ER")] ER 52, RT 433. Crow testified that Smith bought a desktop computer in 2009 and then purchased a laptop using financial aid funds a few days before he moved out of her house in mid-June 2011. RT 295, 434–35, 438–39. When Smith moved out, he took his desktop and laptop with him and moved back to his parents. ER 53, 68. Crow never accessed the laptop and did not know it had a password. ER 52–53, 56.

4

Crow testified that the desktop was always left open without a password. ER 53. When asked if she ever accessed the desktop, Crow responded "only once after he moved out." ER 54. She then testified that in early June 2011 when Smith was hospitalized, she opened the desktop to try to find another phone number for Smith's parents because his mother wasn't returning calls to her cell phone. ER 54, 69. When she opened the computer or tapped it to wake it up, there was an image of a nude toddler lying down with an adult male ejaculating over the toddler. ER 54, 71. She turned off the monitor so it wouldn't be accidentally seen by anyone else in the home. ER 54. When Smith returned from the hospital, she confronted him about the image. He responded that it had been sent to him by accident and he didn't get a chance to delete it. ER 55. They continued to live together for about another month and have had only brief interactions since then because they have a child together. ER 55, 74.

Agent Kotman testified that Crow told him that Smith purchased the laptop near the end of their relationship so that he could use it for school assignments. ER 75–76. Crow also told him about a houseguest named Reva "Kumquat" Albert. ER 79. Crow stated that Albert lived with them for a couple of months near the end of their relationship in 2011. ER 81–82. Agents did not find any desktop computer that they believed belonged to Smith when they searched the Loyche property. ER 82. During his interview, Smith stated that he had thrown his desktop out months ago because he had issues with it. ER 83–84.

Smith testified that he did not know his laptop or hard drive contained child pornography and did not put it on either device. ER 86, 89. He bought the laptop in August 2009 at a Staples store in Salinas. ER 86, RT 571. Smith testified that while the government's spreadsheet purportedly listed files on his external hard drive with dates showing the files were created or added to the hard drive starting in 2007, he did not purchase the hard drive until 2008. RT 569–70; Exh. 47 & Exh. H.

Smith had a desktop computer but he threw it out in 2010 because it was no longer functional. ER 87, RT 522. He did not own the desktop in May 2011 when he was hospitalized as Crow had testified. RT 566. Smith testified that before his May 2011 hospitalization, he told Crow that he was no longer in love with her and that he loved someone else she knew. RT 574.

Smith moved from his parents' home into Crow's house in 2002. RT 521. They relocated to Salinas where their son was born. RT 521. Smith lived with Crow and their son in Salinas until he moved back into his parents' house on June 11, 2011. RT 522. Albert lived at Crow's residence too from early 2011 until well after Smith moved out. RT 562. In May 2011, all three went to an Anime convention in San Jose. RT 575–77; *see* Exh. I. When he moved to his parents' home, he brought everything he owned including the laptop and hard drive. RT 522. Smith repeatedly denied that Crow told him that she found child pornography on any of his computers. RT 532, 558.

Smith testified that after he moved out, he visited and stayed with Crow and their children at her house in Salinas from July 18–19, October 11–12, and December 20–21, 2011.  RT 548–49, 553, 555; Exh. L (photo from July 2011 visit).  Albert was staying there on each visit.  RT 549, 554, 556.  Smith went out to dinner with the children on all three visits, with either Crow, Albert, or both. RT 550, 555, 556.  Smith always took his laptop when he went to Salinas in case the children wanted to watch a movie.  RT 554, 556.  He also stayed with Crow and her husband at a different residence in April 2012.  RT 557.

Smith used the family nickname for his son, frogboy, as the password for his laptop, i.e., Frogboy3.  RT 558–59.  Crow also used that nickname and had a tattoo of a frog, representing her son.  RT 559–60.  When they lived together, Smith shared the password with Crow.  RT 560, 670.  Crow used the computer and had some information on it, including in a folder labeled "Elizabeth."  RT 561.  Smith never put any antivirus software on the laptop.  RT 561.

After he purchased the external hard drive in 2008, he kept it on his computer desk in the living room where Crow and Albert had access to it.  RT 562.  The hard drive was not password protected.  RT 563.  Smith had seen Crow use the hard drive when it was at their house.  RT 562.  Smith created the folder "Robert's Anime," but he did not create the "Animals" or "MYOB" subfolders, RT 661, and did not know the subfolders were there.  RT 565, 651.  Smith knew that MYOB was an acronym for "Mind Your Own Business" from a TV show called NCIS, which Crow and Albert also watched.  RT 566.

(Doc. No. 168-1 at 10–22.)

## LEGAL STANDARD

A. **28 U.S.C. § 2255 Motions**

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed the sentence.  *United States v. Monreal*, 301 F.3d 1127, 1130 (9th Cir. 2002).  Section 2255 provides four grounds upon which a sentencing court may grant relief to a federal prisoner:  (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255(a); *see also Davis v. United States*, 417 U.S. 333, 344–45 (1974); *Monreal*, 301 F.3d at 1130; *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999).

6

To warrant the granting of relief, the movant must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also United States v. Montalvo*, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that *Brecht's* harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254."). Such relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis*, 417 U.S. at 346; *see also United States v. Gianelli*, 543 F.3d 1178, 1184 (9th Cir. 2008).

"[A] district court must grant a hearing to determine the validity of a petition brought under [§ 2255], '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting 28 U.S.C. § 2255). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996) (internal quotation marks omitted); *see also United States v. Withers*, 638 F.3d 1055, 1062–63 (9th Cir. 2011); *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003). To warrant a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief. *Withers*, 638 F.3d at 1062; *McMullen*, 98 F.3d at 1159. Mere conclusory assertions in a § 2255 motion are insufficient, without more, to require the court to hold a hearing. *United States v. Hearst*, 638 F.2d 1190, 1194 (9th Cir. 1980).

**B.      Procedural Bar Doctrine**

The general rule of the procedural bar doctrine is that claims that could have been, but were not, raised by the movant on direct appeal are not cognizable if presented in a § 2255 motion. *See United States v. Frady*, 456 U.S. 152, 168 (1982) (a collateral challenge is not a substitute for an appeal); *Sunal v. Large*, 332 U.S. 174, 178 (1947) ("So far as convictions obtained in the federal courts are concerned, the general rule is that the writ of habeas corpus will not be allowed to do service for an appeal."); *Unites States v. Dunham*, 767 F.2d 1395, 1397 (9th Cir. 1985) ("Section 2255 is not designed to provide criminal defendants repeated opportunities

7

1    to overturn their convictions on grounds which could have been raised on direct appeal.").

2         The procedural bar doctrine is not jurisdictional; the government must raise the procedural

3    default in response to a § 2255 motion or the argument may be deemed waived.  *See United*

4    *States v. Guess*, 203 F.3d 1143, 1146 (9th Cir. 2000) (finding that the government waived its

5    procedural default argument by failing to raise it in the district court, and concluding that "justice

6    would not be served by overlooking the government's waiver"); *Johnson v. Lee*, ___ U.S. ___,

7    ___, 136 S. Ct. 1802, 1806 (2016) ("Ordinarily, procedural default . . . is not a jurisdictional

8    matter.") (internal quotation marks and citation omitted).  "The procedural-default rule is neither

9    a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to

10   conserve judicial resources and to respect the law's important interest in the finality of

11   judgments."  *Massaro v. United States*, 538 U.S. 500, 504 (2003).

12        "[A] procedural default arising from the failure to exhaust may be excused if the petitioner

13   'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of

14   federal law, or demonstrate that failure to consider the claims will result in a fundamental

15   miscarriage of justice.'"  *Manning v. Foster*, 224 F.3d 1129, 1132–33 (9th Cir. 2000) (quoting

16   *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).  "A fundamental miscarriage of justice occurs

17   where a 'constitutional violation has probably resulted in the conviction of one who is actually

18   innocent.'"  *Id*. at 1133 (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).  Where a

19   defendant has procedurally defaulted a claim by failing to raise it on direct review, "the claim

20   may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual

21   'prejudice,' or that he is 'actually innocent.'"  *Bousley v. United States*, 523 U.S. 614, 622 (1998)

22   (citations omitted).  This is because "habeas review is an extraordinary remedy and 'will not be

23   allowed to do service for an appeal.'"  *Id*. at 621 (citation omitted).  Accordingly, "most claims

24   are procedurally defaulted by both federal and state prisoners in habeas proceedings when not

25   raised on direct appeal, absent a showing of cause and prejudice or actual innocence."  *United*

26   *States v. Braswell*, 501 F.3d 1147, 1149 n.1 (9th Cir. 2007).

27        A movant can show cause by demonstrating "that the procedural default is due to an

28   'objective factor' that is 'external' to the [movant] and that 'cannot be fairly attributed to him.'"

8

1    *Manning*, 224 F.3d at 1133 (quoting *Coleman*, 501 U.S. at 731–32).  "Cause must be something

2    *external* to the petitioner."  *Bradford v. Davis*, 923 F.3d 599, 612 (9th Cir. 2019) (quoting

3    *Coleman*, 501 U.S. at 753).  Cause may be based on "some objective factor external to the

4    defense [that] impeded counsel's efforts to comply with the . . . procedural rule . . .."  *Murray*,

5    477 U.S. at 488.  "[A]bsent exceptional circumstances, a defendant is bound by the tactical

6    decisions of competent counsel."  *Reed v. Ross*, 468 U.S. 1, 16 (1984); *see also Bradford*, 923

7    F.3d at 612 ("Attorney ignorance or inadvertence is not cause.") (internal citation and quotation

8    marks omitted).  However, cause may exist when "the factual or legal basis for a claim was not

9    reasonably available to counsel" at the time a direct appeal was filed or could have been filed.

10   *Murray*, 477 U.S. at 488.  As the Supreme Court held in *Murray*,

11   
12   > [C]ounsel's failure to raise a particular claim on appeal is to be
     > scrutinized under the cause and prejudice standard when that failure
     > is treated as a procedural default . . ..  Attorney error short of
13   > ineffective assistance of counsel does not constitute cause for a
     > procedural default even when that default occurs on appeal rather
14   > than at trial.  To the contrary, cause for a procedural default on appeal
     > ordinarily requires a showing of some external impediment
15   > preventing counsel from constructing or raising the claim.

16   *Id.* at 492.

17       Turning to the second requirement in order to avoid a procedural default based upon the

18   failure to raise an issue on direct review, to show actual prejudice a movant is required to

19   establish "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they

20   worked to his *actual* and substantial disadvantage, infecting his entire trial with error of

21   constitutional dimensions."  *Frady*, 456 U.S. at 170.  The Supreme Court has "refrained from

22   giving precise content to the term prejudice."  *Id.* at 168.  Though, "[s]uch a showing of pervasive

23   actual prejudice can hardly be thought to constitute anything other than a showing that the

24   prisoner was denied 'fundamental fairness' at trial."  *Murray*, 477 U.S. at 494.

25       If the evidence raises a dispute regarding the facts underlying a claim of cause or

26   prejudice, the district court must conduct an evidentiary hearing to resolve any such dispute.  *See*

27   *United States v. Mejia-Mesa*, 153 F.3d 925, 928–29 (9th Cir. 1998) (remanding § 2255 motion for

28   evidentiary hearing to determine factual issues regarding cause).  However, "merely conclusory

9

1    statements" are insufficient to require a hearing on cause or prejudice.  *See United States v.*

2    *Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).  Additionally, if the petitioner cannot meet one of the

3    requirements, it is unnecessary for the court to address the other requirement.  *See, e.g.*, *Frady*,

4    456 U.S. at 168 ("find[ing] it unnecessary to determine whether Frady has shown cause, because

5    we are confident he suffered no actual prejudice of a degree sufficient to justify collateral relief

6    19 years after his crime").

7    **C.      Relitigation Bar**

8            It is also well-established that claims or arguments a defendant previously raised on direct

9    appeal are not cognizable in a § 2255 motion.  *Davis*, 417 U.S. at 342 (issues determined in a

10   previous appeal are not cognizable in a § 2255 motion absent an intervening change in the law);

11   *United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985) (holding that claims previously raised on

12   appeal "cannot be the basis of a § 2255 motion"); *United States v. Currie*, 589 F.2d 993, 995 (9th

13   Cir. 1979) ("Issues disposed of on a previous direct appeal are not reviewable in a subsequent §

14   2255 proceeding."); *Egger v. United States*, 509 F.2d 745, 748 (9th Cir. 1975) ("Issues raised at

15   trial and considered on direct appeal are not subject to collateral attack under 28 U.S.C. § 2255.")

16   (citing *Clayton v. United States*, 447 F.2d 476, 477 (9th Cir. 1971) (holding that the movant's

17   "attempt to relitigate the legality of the search and seizure was properly rejected by the district

18   court" because that contention had already been rejected on direct appeal)).

19           This bar against relitigating issues in a § 2255 proceeding is an application of the law of

20   the case doctrine.  *See United States v. Jingles*, 702 F.3d 494, 498 (9th Cir. 2012) ("A collateral

21   attack is the 'same case' as the direct appeal proceedings for purposes of the law of the case

22   doctrine.").  "Under the 'law of the case' doctrine, a court is ordinarily precluded from

23   reexamining an issue previously decided by the same court, or a higher court, in the same case."

24   *Richardson v. United States*, 841 F.2d 993, 996 (9th Cir. 1988).[3]  "When a defendant has raised a

25   
     ─────────────────────
26   [3]  The Ninth Circuit has recognized exceptions justifying a court departing from the "law of the
     case" doctrine where:  "(1) the decision is clearly erroneous and its enforcement would work a
27   manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3)
     substantially different evidence was adduced."  *Gonzalez v. Arizona*, 677 F.3d 383, 390 n.4 (9th
28   Cir. 2012) (*en banc*) (internal quotation marks and citation omitted).

1    claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may

2    not be used as basis for a subsequent § 2255 petition." *United States v. Hayes*, 231 F.3d 1132,

3    1139 (9th Cir. 2000) (concluding that "[i]t is the law of this case that the government did not

4    violate its *Brady* obligation" where the defendant's *Brady* claims had already been expressly

5    addressed and rejected on direct appeal).

6                                           **ANALYSIS**

7            Here, movant asserts in his pending § 2255 motion that he is entitled to post-conviction

8    relief on two grounds, both of which the government contends are barred.  The court will address

9    each ground in turn, and for the reasons explained below, the court finds that it is plain on the

10   face of the motion and the records in this case that movant is not entitled to § 2255 relief on either

11   ground.

12   **A.       Broken Chain of Custody Claim**

13           Movant claims that there was a break in the chain of custody of his laptop that was seized

14   by law enforcement and on which child pornography files were found because the laptop was not

15   stored in a secure evidence lock-up until two weeks after it was collected.  (Doc. Nos. 162 at 5;

16   173 at 2.)  Specifically, in his pending motion, movant contends that his first ground for relief is

17   based on "[v]iolation of the handeling [sic], and processing of collected evidence" and states the

18   following facts in support of his claim in this regard:

19                   On December 23, 2011, DHS Agent Timothy Kotman executed a
                search warrant where [movant] lived at the time.  Evidence was
20              collected by DHS Agent Kotman.  Collected Evidence was not
                placed into Evidence lock-up till January 6, 2012.  During that time
21              Evidence was not stored in a secure location breaking chain of
                Custody.(Doc. No. 162 at 5.)  Movant also explains that his first
22              ground for relief "was not presented due to the information not being
                presented to the Appeals Attorney at the time of Filing."
23

24   (*Id.*)

25           In response to the pending motion, the government argues that movant procedurally

26   defaulted this claim challenging the chain of custody of his seized laptop by failing to raise the

27   issue on direct appeal.  (Doc. No. 168 at 4.)  In his direct appeal from his conviction and sentence,

28   movant raised four distinct issues, but he did advance a challenge to his conviction related to the

                                                   11

chain of custody of any evidence introduced against him at trial.  (*Id*. at 2; Doc. No. 168-1 at 8–9.)  According to the government, movant cannot show actual cause and prejudice for this default because the chain of custody issue was raised during trial and argued by defense counsel in his closing argument to the jury, and movant's only proffered reason for not raising the issue on direct appeal shows neither cause nor prejudice.  (*Id*.)

   In his reply, movant does not address the government's procedural default argument or make any attempt to show cause or prejudice.  Rather, movant cites to the Supreme Court's decision in *Massaro v. United States*, 538 U.S. 500 (2003), but he incorrectly quotes that case as stating that "[a] convicted federal criminal defendant may properly first bring a claim in a collateral proceeding under 2255, regardless of wether [sic] the defendant could have raised the claim on direct appeal."  (Doc. No. 173 at 2.)  In fact, the language that movant purports to quote from *Massaro* does not appear in that opinion.  The Court in *Massaro* held that "*an ineffective-assistance-of-counsel claim* may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."  *Massaro*, 538 U.S. at 504 (emphasis added).  Here, movant's reliance on *Massaro* is unavailing and inapplicable because he has not asserted a claim of ineffective assistance of counsel in his pending § 2255 motion.

   The court finds that movant has procedurally defaulted on his broken chain of custody claim by failing to raise this issue on direct appeal, and he has failed to show actual cause and prejudice to overcome the procedural bar.  Movant has not articulated any objective factor, external to him, that impeded his or his counsel's ability to raise the issue on appeal or that otherwise accounts for his procedural default.  *See Bradford*, 923 F.3d at 612; *Murray*, 477 U.S. at 488.  The court agrees with the government that the reason proffered by movant—that he did not previously present this claim in his direct appeal "due to the information not being presented to the Appeals Attorney at the time of filing"—is insufficient to show actual cause.  Moreover, movant's attempted explanation for the failure to raise this issue on appeal rings hollows because the "information" about the chain of custody of the laptop was presented in testimony at trial and indeed was specifically addressed by movant's counsel in his closing argument to the jury; it was necessarily transcribed and appeared in the transcripts of the trial court proceedings, which were

12

1    available to movant's appellate counsel as part of the record on appeal.  (*See* Doc. Nos. 151–154.)

2    In fact, movant's opening brief on direct appeal cited extensively from the Reporter's Transcript,

3    including to portions of Agent Solorio's testimony.[4]  (*See* Doc. No. 168-1 at 14–16.)  Thus,

4    movant has made no showing that "the factual or legal basis for [his] claim was not reasonably

5    available to counsel" at the time movant's direct appeal was filed.  *See Murray*, 477 U.S. at 488.

6    Indeed, the record now before this court supports the opposite conclusion:  that the factual and

7    legal basis for movant's claim was reasonably available to his appellate counsel.  The fact that

8    movant's respected appellate counsel did not raise this particular issue on appeal does not

9    establish cause.  *See Reed*, 468 U.S. at 16; *Bradford*, 923 F.3d at 612; *Murray*, 477 U.S. at 492.

10           Because movant fails to provide any reasonable explanation as to why the issue was not

11   raised on direct appeal, movant has not shown the requisite "cause" to defeat his procedural

12   default, and it is unnecessary for the court to address whether he has shown actual prejudice.  *See*

13   *Frady*, 456 U.S. at 168.  In addition, the court determines that there is no need for an evidentiary

14   hearing under these circumstances because movant has not presented any evidence of disputed

15   facts underlying any claim of cause or prejudice with respect to the failure to raise this issue on

16   direct appeal.  *See Mejia-Mesa*, 153 F.3d at 928–29.  Accordingly, the court finds that movant's

17   first ground for relief is subject to the procedural bar and will deny movant's § 2255 motion with

18   respect to his challenge to the chain of custody of his seized laptop on that basis.

19   _____

20   [4]  Instead of explaining why he failed to raise this issue on appeal, movant recounts Agent
     Solorio's trial testimony and argues that the government "allowed the evidence to become
     corrupted when it was not stored in evidence check-in for two weeks."  (Doc. No. 173 at 2–3.)

21   Movant asserts that proof of the corruption is shown by the "file creation dates that exist before
     the registration file was installed, and manufacture of the laptop."  (*Id*. at 2.)  Movant also asserts

22   that because Agent Solorio had to create a new mirror image of the laptop after reverification
     failed, "it is not known at this time if the first mirror image was ever handed over to the defense

23   so it could be examined."  (*Id*. at 3.)  Movant contends that "[t]hese facts show that the evidence
     no longer became admissible in court as the evidence no longer matched what the Government

24   claim they seized," and the government "pursued the case in bad faith."  (*Id*.)  Yet, critically,
     movant does not explain why these arguments were not presented in his direct appeal, even

25   though all of this information was the subject of trial testimony and was documented in the trial
     transcripts, which movant's appellate counsel reviewed and relied upon in his appellate briefing.

26   (*See* Doc. Nos. 151–154.)  It would appear that the reasonable inference to be drawn here is that
     movant's appellate counsel did not raise this issue on appeal because he concluded it was not well

27   taken.

28

                                                                    13

1    The government also argues that even if movant had not procedurally defaulted, his chain

2    of custody claim would not be an error of constitutional dimension because such a claim relates to

3    the weight of the evidence, rather than its admissibility.  (Doc. No. 168 at 4–5) (citing *United*

4    *States v. Harrington*, 923 F.2d 1371, 1374 (9th Cir. 1991) ("Merely raising the possibility of

5    tampering is not sufficient to render evidence inadmissible.")).  In particular, the government

6    points to the argument that movant's defense counsel made at trial—"that the alleged two-week

7    gap between evidence collection and the log entry for evidence lockup adversely affected the

8    reliability of the evidence"—and to the testimony of the government's forensic expert—"that the

9    electronic data on the laptop computer and external hard drive had not been altered since the time

10   it was seized."  (*Id*. at 5.)  The government contends that any conflicting evidence regarding the

11   chain of custody of movant's seized laptop "was resolved by the jury in favor of the government"

12   because "[t]he jury nevertheless convicted [movant]."  (*Id*.)

13   The court is persuaded by the government's argument in this regard and concludes that, even if

14   not procedurally barred, movant's chain-of-custody arguments—which were made to and

15   resolved by the jury—provide no basis for the § 2255 relief he seeks here.  *See United States v.*

16   *Vidacak*, 553 F.3d 344, 350 (4th Cir. 2009) (holding that district court properly admitted military

17   documents into evidence despite an imperfect chain of custody and concluding that "a proponent

18   need not establish a perfect chain of custody or documentary evidence to support their

19   admissibility") (citing *United States v. Cardenas,* 864 F.2d 1528, 1531 (10th Cir. 1989)

20   ("deficiencies in the chain of custody go to the weight of the evidence, not its admissibility; once

21   admitted, the jury evaluates the defects and, based on its evaluation, may accept or disregard the

22   evidence")); *see also Jones v. United States*, No. 1:12-cr-140-CLC-SKL, 2018 WL 1124957, at

23   *6 (E.D. Tenn. Mar. 1, 2018) ("Petitioner's chain-of-custody arguments provide no basis for

24   § 2255 relief because such evidentiary issues affect the reliability of evidence and are properly

25   presented to and resolved by the jury, not through suppression.") (citing *United States v. Kinnard*,

26   968 F.2d 1216 (6th Cir. 1992) ("Gaps in the chain of custody affect the weight of the evidence

27   not the admissibility of the evidence.")).  Thus, the court will deny movant's § 2255 motion with

28   /////

1   respect to his challenge to the chain of custody of his seized laptop on this alternative basis as

2   well.

3   **B.      Claim that His Former Girlfriend's Testimony was Erroneously Admitted at Trial**

4          Movant also claims that he is entitled to post-conviction relief on the ground that

5                  [t]he district court erred in admitting the uncorroborated testimony
               of [his] former girlfriend under Federal Rules of Evidence 404(b) and
6               403 that she saw an image of child pornography on his desktop
               computer at their Salinas home to prove that he downloaded child
7               pornography six months later on [his] laptop at his parents['] home
               in Lemoore[,] California.
8

9   (Doc. No. 173 at 4.)  Specifically, in his pending motion, movant states that his second ground for

10  relief is based on "[v]iolation of Federal rule 404(B) and 403 concerning Elizabeth Crow's

11  Testimony" and states the following facts in support of that claim:  "Crow testified that [movant]

12  purchased the laptop in June of 2011, and that Crow accessed the laptop after [movant] moved

13  out of the home.  DHS Agent Ulises Solorio testified that the laptop was set-up and registered to

14  Robert Smith on October 19, 2010." (Doc. No. 162 at 5.)

15          In response to the pending motion, the government points out that unlike movant's first

16  ground for relief, movant presented this issue in his direct appeal.  (Doc. No. 168 at 2.)  The

17  government refers to the opening appellate brief filed on movant's behalf on appeal, which set

18  forth the first issue presented for review as:

19                  Whether the district court erred in admitting testimony from
               defendant Robert Smith's former girlfriend under Federal Rules of
20              Evidence 404(b) and 403 that she saw child pornography on his
               desktop computer when he was hospitalized to show that he
21              downloaded child pornography on his laptop at his parents' house in
               Lemoore six months later.
22

23  (Doc. No. 168-1 at 8.)  The government also cites to the decision by the Ninth Circuit Court of

24  Appeals, which rejected movant's challenge in this regard and affirmed his judgment of

25  conviction and sentence, determining that "[t]he evidence was properly admitted, with a limiting

26  instruction, to prove intent, knowledge, and the absence of mistake of lack of accident." (Doc.

27  /////

28  /////

15

No. 168 at 2) (quoting *United States v. Smith*, 721 Fed. Appx. 726, 727 (9th Cir. 2018)).[5]

Accordingly, the government argues that movant's second claim for relief is barred and that he

may not relitigate this issue, which has already been considered and rejected on the merits by the

Ninth Circuit on direct appeal.  (Doc. No. 168 at 5–6.)

In his reply, movant does not address the government's argument that this claim is barred

or the fact that the Ninth Circuit has already rejected movant's arguments regarding the admission

of his former girlfriend's testimony at trial.  Instead, movant merely reiterates the same

arguments—verbatim—that were presented to the Ninth Circuit on direct appeal.  (*Compare* Doc.

No. 173 at 4–10 *with* Doc. No. 168-1 at 28–36.)

The court concludes that movant's second claim for relief is clearly barred and cannot

serve as a basis for the post-conviction relief that he now seeks.  *See Hayes*, 231 F.3d at 1139

("When a defendant has raised a claim and has been given a full and fair opportunity to litigate it

on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition.").

Moreover, movant does not argue that any of the recognized exceptions to the relitigation bar

should apply in these circumstances, and nothing in the record before this court would support

such a conclusion.  *See Gonzalez*, 677 F.3d at 390 n.4.

Accordingly, the court finds that movant's second ground for relief is also barred and will

deny movant's § 2255 motion on that basis as well.

## C.    Certificate of Appealability

A movant cannot appeal from the denial or dismissal of his § 2255 motion unless he has first

obtained a certificate of appealability.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  To obtain

a certificate of appealability under 28 U.S.C. § 2253(c), a movant "must make a substantial

showing of the denial of a constitutional right, . . . includ[ing] showing that reasonable jurists

could debate whether (or, for that matter, agree that) the [motion] should have been resolved in a

different manner or that the issues presented were 'adequate to deserve encouragement to proceed

/////

---

[5]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth Circuit Rule 36-3(b).

16

1    further.'" *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (quoting *Barefoot v. Estelle*, 463 U.S.
2    880, 893 & n.4 (1983)).

3         In this case, reasonable jurists would not debate that movant's first ground for relief has
4    been procedurally defaulted and that his second ground for relief, which has already been rejected
5    on direct appeal, cannot being relitigated in this § 2255 proceeding absent circumstances that do
6    not exist here.  Therefore, the court will decline to issue a certificate of appealability.

7                                    **CONCLUSION**

8         Accordingly,

9    1.   Movant's pending motion to vacate, set aside, or correct his sentence pursuant to
10         28 U.S.C. § 2255 (Doc. No. 162) is denied;

11   2.   The court declines to issue a certificate of appealability under 28 U.S.C. § 2253(c);
12        and

13   3.   This case remains closed.

14   IT IS SO ORDERED.

15   Dated:   **September 8, 2020**                    _____
16                                                     UNITED STATES DISTRICT JUDGE

17
18
19
20
21
22
23
24
25
26
27
28

                                        17